# LEVI HUEBNER & ASSOCIATES, PC
## ATTORNEYS AND COUNSELORS AT LAW

488 EMPIRE BOULEVARD, SUITE 100
BROOKLYN, NY 11225
TEL: (212) 354-5555
FAX: (718) 636-4444

EMAIL: NEWYORKLAWYER@MSN.COM

May 12, 2023

**Via ECF To:**

The Honorable Judge Nina R. Morrison
District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

### Re: Eisenman et al v. Katz et al, CASE: 2:23-cv-02889 (NRM)-(ARL)

Honorable Judge Morrison:

Please be advised that we represent the Defendants in this matter. Pursuant to Your Honor's individual rules, the Defendants are seeking a pre-motion conference to address Defendants' pre-answer motion to dismiss pursuant to FRCP § 12(b)2 and 12(b)5.

We remind the Court that Your Honor issued an order to show cause directing Defendants to file a supplemental brief regarding the basis for removal jurisdiction on or before May 11, 2023, and extended the time to May 15, 2023. While the Defendants will timely file the supplemental brief addressing the Court's OSC, as a preliminary matter the Defendants briefly address removal jurisdiction herein.

### REMOVAL WAS TIMELY

Preliminarily, the Defendants' Notice of Removal, was timely filed. In *C.Q. v. Estate of Estate of Rockefeller*, 2020 U.S. Dist. LEXIS 175172 the court held that when Defendants are served by "nail & mail" the time for removal only begins to run ten days after the affidavit of service was filed with the Court. "('*30-day* period for *removal* cannot begin to run until defendant is an official party to the proceeding and has an obligation to respond to the action, which only occurs *after* strict compliance with state procedural *service* rules—in this case, 10 *days after* the filing of proof of *service*.' (citing *N.Y. C.P.L.R. § 308(2)*).); *Stop & Shop Supermarket Co. LLC v. Goldsmith, No. 10-CV-3052 (KMK), 2011 U.S. Dist. LEXIS 35719, 2011 WL 1236121, at \*3-6 (S.D.N.Y. Mar. 31, 2011)."* C.Q., 2020 U.S. Dist. LEXIS 175172, \*9.

THE COURT HAS ORIGINAL JURISDICTION BASED ON THE
SECURITIES ACT

Federal jurisdiction exists, when the Plaintiffs allege that the "Defendants . . . defraud investors by taking their money and not using it for its intended purpose." Where, plaintiffs were defrauded in a scheme "stemming from Defendants' assistance and participation in a massive fraud relating to a raise of capital by an individual named Aaron Fischman ("Fischman") for a business entity known as Cardis."

Although the complaint is lacking in the specificity required for a fraud complaint and merely speaks in general and conclusory terms, the crux of the claim is that Eisenman and Begun, some 12 years ago, were defrauded by Katz, because the proceeds of their purchase of stock in the company Cardis, instead of going to Cardis, as Plaintiffs expected, went to Fischman and other inappropriate expenditures which Katz facilitated.

As the Supreme Court stated the Exchange Law, "Section 10(b) outlaws the use 'in connection with the purchase or sale' of any security of 'any manipulative or deceptive device or contrivance.' The Act protects corporations as well as individuals who are sellers of a security. Manhattan was injured as an investor through a deceptive device which deprived it of any compensation for the sale of its valuable block of securities. The fact that the fraud was perpetrated by an officer of Manhattan and his outside collaborators is irrelevant to our problem. For section 10(b) bans the use of any deceptive device in the 'sale' of any security by 'any person.' And the fact that the transaction is not conducted through a securities exchange or an organized over-the-counter market is irrelevant to the coverage of section 10(b). *Supt. of Insurance v. Bankers Life & Cas. Co*., 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L. Ed.2d 128 (1971).

Rule 10b–5, which implements this provision, forbids the use, "in connection with the purchase or sale of any security," of "any device, scheme, or artifice to defraud" or any other "act, practice, or course of business" that "operates ... as a fraud or deceit." 17 CFR § 240.10b–5 (2000). Among Congress' objectives in passing the Act was "to insure honest securities markets and thereby promote investor confidence" after the market crash of 1929. *United States v. O'Hagan*, 521 U.S. 642, 658, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997); see also *United States v. Naftalin*, 441 U.S. 768, 775, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979). More generally, Congress sought " 'to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry.' " *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) (quoting *SEC v. Capital Gains Research Bureau, Inc*., 375 U.S. 180, 186, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963)).

"Consequently, we have explained that the statute should be "construed 'not technically and restrictively, but flexibly to effectuate its remedial purposes.' " 406 U.S., at 151, 92 S.Ct. 1456 (quoting Capital Gains Research Bureau, Inc., 375 U.S., at 195, 84 S.Ct. 275). In its role enforcing the Act, the SEC has consistently adopted a broad reading of the phrase "in connection with the purchase or sale of any security." It has maintained that a broker who accepts payment for securities that he never intends to deliver, or who sells customer securities with intent to misappropriate the proceeds, violates § 10(b) and Rule 10b–5. See, e.g., *In re Bauer*, 26 S.E.C. 770, 1947 WL 24474 (1947); *In re*

*Southeastern Securities Corp.*, 29 S.E.C. 609, 1949 WL 36491 (1949)".S.E.C. v. *Zandford*, 535 U.S. 813, 819, 122 S. Ct. 1899, 1903, 153 L. Ed. 2d 1 (2002)

In this case Plaintiffs are claiming that that when Eisenman and Begun gave checks to Katz that were supposed to go to the company, Cardis, funds were instead misappropriated by Katz.  Katz knew of this, and therefore had an obligation both to inform the investor Plaintiffs prior to their investment, as well as to send the funds to Cardis.

## THE PLAINTIFFS HAVE FAILED TO PLEAD OR STATE A CAUSE OF ACTION

Assuming that the Plaintiffs are capable of pleading fraud with the required specificity, Plaintiffs would then have to explain why they have standing to bring an action based on the misappropriation of corporate funds.  Shareholders, even when they call themselves members, cannot bring an individual action, but can only bring a derivative action for the claimed fraud.  "For a wrong against a corporation a shareholder has no individual cause of action, though he loses the value of his investment or incurs personal liability in an effort to maintain the solvency of the corporation".  *Abrams v. Donati* 66 N.Y.2d 951, 953, 489 N.E.2d 751, 751 (1985) In all their claims within this complaint plaintiffs seek return of "their" funds. The only private right of action that is consistent with that relief is 10(b).

The complaint fails to properly plead any other causes.  The complaint acknowledges that Katz was the attorney of Fischman and Cardis.  There is no basis for a malpractice claim or a breach of fiduciary claim.  The claim based on the judiciary law is completely frivolous as that statute only applies to conduct during litigation.

## DEFENDANTS SEEK TO MOVE FOR DISMISSAL OF THE COMPLAINT

Pursuant to FRCP § 81(c)(2) the deadline to file an answer or pre-answer motion after removal is 7 days. However, by electronic Order dated April 21, 2023, the Honorable Magistrate Judge Arlene R. Lindsay, extended Defendants' time to move or answer to May 12, 2023.

The Defendants, pursuant to FRCP § 12b, will move to dismiss the complaint as to all defendants[1]. Notably, while the complaint mentions Katz and the Katz entities twenty-eight (28) times, the Plaintiffs scream about the non-party Fischmans fifty-three (53) times. Clearly,  the complaint is a frivolous harassment brought by Plaintiffs and their counsel who have become emotionally entangled in everything any anyone with a nexus to the Fischmans.

First, the commercial entities, Law office of Lawrence Katz PLLC and Law Office of Lawrence Katz P.C. will move to dismiss based upon Rule 12b(5), a failure to serve.

---

[1] Plaintiffs in their letter dated May 10, 2023 [NYSCEF 6] Concede in part that "this case does not belong in Federal Court." We agree, on multiple grounds this Court should dismiss the complaint, because this case based on an improperly plead complaint does not belong in Federal Court or State Court.

The affidavits of service indicate that all three defendants were served at the same time and place by "nail and Mail." Nail and Mail cannot be used to serve a commercial entity.

The law in New York "is well established that the "nail-and-mail" provision under N.Y. C.P.L.R. § 308(4) applies "only to defendants who are natural persons and cannot be used to serve a corporation." *Lakeside Concrete Corp. v. Pine Hollow Bldg. Corp.*, 479 N.Y.S.2d 256 (N.Y. App. Div. 1984), *aff'd*, 65 N.Y.2d 865 (1985); *see also Nesterov v. Kvadro S. Corp.*, No. 18-CV-7200 (MKB) (SJB), 2021 WL 1236029, at *3 (E.D.N.Y. Mar. 11, 2021), *adopted by*, 2021 WL 1238707 (Apr. 2, 2021) (" '[A]ffix-and-mail' service, embodied in C.P.L.R. 308, is a means of serving individuals, not a corporation."). Further, Plaintiff fails to take into account that Defendant is a limited liability company, to which a separate provision, N.Y. C.P.L.R. § 311-a, applies. As is the case with corporations, however, service on a limited liability company cannot be completed via "nail-and-mail."[2] Accordingly, service was not proper under New York law." *Retrospective Goods, v. T&M Investments International, et al*., No. 20-CV-6201 (AMD) (RER); 2022 WL 2161935.

Second, as to all Defendants, the action was brought beyond the statute of limitations. While the complaint is lacking in specificity regarding fraud allegations, the complaint indicates that the actual transactions complained of occurred in January 2010 and as to the other defendant between 2008 and 2011.  Plaintiffs' counsel in this case, Elliot J. Blumenthal, represented a different plaintiff in a RICO case brought against Lawrence Katz and the Fischmans in 2018 based on the same allegations which appear in this complaint. Parenthetically, in that Rico case, the court granted the undersigned's preanswer motion and the case was dismissed by the Honorably Judge Nicholas G. Garaufis on March 25, 2020. Of course, given the multiple federal actions brought against the Katz entities, the first having been brought 2014, as well as the action brought by the New York State Attorney General in 2018, there would be no imaginable basis for the tolling of the statute of limitations.  In any case, the statute of repose in this matter is no longer than 5 years. Well passed the allegations of improprieties which are to have occurred between 2008 and 2011.

Third, Plaintiffs' complaint is fifteen pages with allegations referring to events as far back as 2010 and involving multiple non-parties. Despite the number of pages, the complaint lacks the requisite specificity required for a complaint founded on fraud and certainly not for one which involves securities. Not unlike Plaintiffs' letter to this Court [ECF 6], the complaint is long on conjecture and invectives and short on material allegations.

The Plaintiffs claim to have lost money that they invested in a company called Cardis (though a non-party, mentioned twenty-three (23) times), yet despite the length of the complaint, Plaintiffs have not specified how they made their investment, the tenure of the investment, where their money was deposited or what happened to their money. Defendant Begun claims to have gotten $300,000 back from the company but has not indicated details of these transactions. All of Plaintiffs' allegations are conclusory without any of the detail required for this type of complaint.

Respectfully,

/ s / Levi Huebner
 Levi Huebner